THE PEOPLE OF THE STATE OF NEW YORK ex rel. J. PHILIP BENKARD, Respondent, v. HENRY M. GOLDFOGLE and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants. (Moneyed Capital Taxes of 1923.)

First Department, July 6, 1925.

**Taxation — tax on moneyed capital coming into competition with business of National banks — money of relator is invested in stock and commodities brokerage concern — firm buys and sells stock and commodities for customers on commission — firm finances transactions with its own money and on money borrowed from banks — advances made customers are mere incidents of business — relator's share of assets not taxable on basis that it comes into competition with business of National banks.**

The share of the relator's assets in a stock and commodity brokerage concern is not taxable on the basis that it comes into competition with the business of National banks, since it appears that the business of the firm consists of buying and selling stocks, bonds and commodities solely for its customers and not on its own account, principally upon margin, for which business it charges a commission, and that the financing of its customers by advances from its own funds and through money borrowed by it from banks, is a mere incident of the business in which the relator's firm is engaged.

APPEAL by the defendants, Henry M. Goldfogle and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 31st day of December, 1924, in certiorari proceedings brought to review assessments on property of the relator, under the Laws of 1923, chapter 897, amending the Tax Law and known as the Moneyed Capital Tax Law, directing that the assessment of $175,000 made by the defendants for the purposes of taxation for the year 1923, against the relator on the value of moneyed capital owned or held by the relator coming into competition with the busness of National banks, be vacated and canceled.

The opinion of the Special Term is reported *sub nom. People ex rel. Broderick* v. *Goldfogle* (123 Misc. 399).

*George P. Nicholson, Corporation Counsel* [*William H. King* of counsel; *Eugene Fay* with him on the brief], for the appellants.

*Gilman & Unger* [*William F. Unger* of counsel], for the respondent.

DOWLING, J.:

Relator is a resident of the city of New York and a member of the firm of J. P. Benkard & Co., with an office at 61 Broadway. He has capital invested in transacting the business of the firm, comprising a one-half interest in the firm's net assets, and also

with capital invested in a seat in the New York Cotton Exchange and a seat in the Chicago Board of Trade, he being engaged in no other business than as a member of the firm and owning no other moneyed capital than in connection with such business.

On May 1, 1923, the firm of J. P. Benkard & Co. was engaged in the business of buying and selling stocks, bonds and commodities solely for its customers and not on its own account, principally upon margin and the remainder for cash, its profits being made from charges to its customers. The purchases for customers were financed by the firm's capital and by such additional moneys as it required, which it borrowed from banks, trust companies and other brokers. The charges made by the firm to its customers included a charge at the rate of commission fixed by the rules of the respective exchanges, which was the same whether the purchase was made on margin or for cash, and for a sale as for a purchase; and also, in the case of margin accounts, a charge denominated an interest charge calculated on the debit balance of the customer, such rate being made on the firm's capital used, and also on the money borrowed by the firm in carrying the customer's indebtedness.

The learned court at Special Term in this proceeding found the following additional facts:

" XIV. The advances made by the firm to its customers on securities purchased or sold for their account were an incident to its business of buying and selling securities on commission.

" XV. National banks do not and could not engage in purchasing and selling securities or commodities for customers either on margin or for cash.

" XVI. The advances made by the firm for the account of its customers were not such loans as National banks make to customers, nor were they made directly as loans, and they constituted the device by which the firm increased its earnings of commissions.

" XVII. The said firm did not compete with National banks, but on the contrary, with other brokers, supplied National banks with a substantial portion of their business."

The testimony in this proceeding shows that out of a total of $99,250,000 borrowed by the firm for the period from May 1, 1922, to May 1, 1923, the sum of $56,175,000 was borrowed from National banks. It also appears that customarily an active stockbroker borrows twenty times the amount of his capital to keep his business moving. It was further testified to, that on margin accounts the amount deposited by customers runs from ten to twenty-five per cent of the purchase price of the stock, and that National banks will loan, at the most, eighty per cent of the value of very high grade collateral, such as government bonds, and only seventy

per cent on lower grades of collateral, and on all industrial loans. Thus there is always a deficit between the total of the customer's payment and the National bank loan which the broker is forced to advance in order to be able to complete the transaction and earn his commission.

For the reasons assigned in *People ex rel. Broderick* v. *Goldfogle* (213 App. Div. 677) I am of the opinion that the present order annulling and vacating the assessment should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.